By the Court.—Freedman, J.
The issues in this action were tried by a referee, and the case on appeal as settled and filed and printed, states that it “ does not contain all the testimony given at the trial bearing upon the questions at issue, the findings made and refused, and the evidence admitted or ruled out under defendant’s *314 exceptions.” That being. so, the duty of. the general term in such a case,' ordinarily, is to see whether the facts as found by the referee support the conclusions of law at which he arrived. Nevertheless, if certain evidence, and notably documentary evidence, contained in the printed record about which there is no dispute and which cannot be affected by the omitted testimony, should clearly establish that the findings of fact are incomplete, or somewhat at variance with the real fact, effect may and should be given to such undisputed evidence in the determination of a question distinctly raised by the exceptions.
The referee made 134 findings of fact at the request of the plaintiffs which are set forth on pp. 102 to 129, and about 70 more at the request of the defendant which appear on pp. 61 to 95, of the printed case.
Briefly stated the action was brought to recover losses alleged to have been sustained by the plaintiffs as defendant’s agents upon various contracts of purchase and sale of merchandise made by them for defendant’s account and pursuant to his orders. The main defense, besides what may be deemed to be a general denial of everything except the employment and the giving of certain orders, is that the plaintiffs did not faithfully carry out the defendant’s orders and that- they without authority canceled most of the contracts before they matured.
To establish their case it was incumbent upon plaintiffs to prove affirmatively: (1) that the several contracts set forth in their bill of particulars were actually made; (2) that each of these contracts was severally carried out; and (3) that the losses alleged to have been suffered on each contract were actually sustained in the fulfillment thereof. The referee found that the plaintiffs had established their case in these particulars, according to customs and usages • binding upon the defendant, notwithstanding the further fact which he also found, that the plaintiffs, as agents of the defendant and without *315 consultation with or notice to the defendant, had canceled most of the contracts sued on before their maturity.
The most important question presented by the appeal therefore relates to the legal effect of such cancellation upon the rights and liabilities of the parties in view of all the other facts found, and in view of the undisputed documentary evidence in respect to said customs and usages.
During all the times in question the plaintiffs were copartners, as commission merchants in grain and provisions, carrying on business in the city of New York under the firm name of E. A. Kent & Co., and in the city of Chicago, 111., under the firm name of Poole, Kent & Co. During the same time there existed in the city of New York an organization knoAvn as the New York Produce Exchange, and in the city of Chicago an organization knoAvn as the Chicago Board of Trade. Transactions in buying and selling grain and provisions for future delivery were had and made in both organizations. Each of them had a membership, and transactions therein were confined to members, or the immediate agents or representatives of members, and each of said organizations had rules, customs and methods of transactions in grain and provisions for future delivery, Avhich Avere substantially the same in both organizations. In November, 1881, the defendant employed the plaintiffs as commission merchants, or brokers, to buy and sell for his account and risk, and upon his order, grain and provisions for future delivery in the markets of New York city and of Chicago, 111., and such employment and authority continued until April, 1882. Prior to, at and during such employment, the defendant knew of the existence of the organizations referred to; he knew that the plaintiffs, or some of them, were members of the NeAv Yórk Produce Exchange, and that at least one of -them was a member of the Chicago Board of Trade; and he must be assumed to have employed them because they were such members, and he was not, and because *316 he intended that his orders should be executed by them in said organizations according to the rules and customs established by said organizations. Indeed, in view of the findings made by the referee, all the orders given by the defendant must be assumed to have been given under the circumstances and for the purposes stated. The orders which were given, were executed by the plaintiff’s by their entering into contracts of purchase or sale for future delivery with other members of the organizations named, but such contracts were, soon after they had been made, canceled by the plaintiffs against other contracts made by them for account of other customers on the opposite side of the market. This cancellation is sought to be upheld under certain rules and customs of the said organizations.
The. most material findings made by the referee upon this branch of the case are as follows, viz:—
“ XXXIII. That as to all of said transactions prior to April 17, 1882, defendant in no case requested the manual delivery of the merchandise covered thereby to or by himself, or in his behalf.
“ XXXIV. That as to all of said transactions which were consummated upon defendant’s order or authority, prior to April 17, 1882, defendant ordered or authorized the consummation of his sales or purchases before the time for delivery had arrived pursuant to the contract, by making a purchase to meet the prior sale, or a sale to meet a prior purchase of an equal quantity of merchandise- of a like delivery.
“ XXXV. That until said transactions were so consummated by defendant’s authority, plaintiff firm had at all times the obligation of a firm or person other than itself to make a delivery of merchandise sold, and to receive and pay for merchandise bought upon defendant’s order (but plaintiffs did not specify, and have not specified such person or firm).
“ XXXVI. That according to the customs and rules *317 prevailing as to said transactions, defendant entered into no obligation therein except to plaintiff firm.
“ XXXVII. That as to all of said transactions which defendant ordered or requested plaintiff firm to make in his behalf, and for his account, defendant, for the carrying out or consummation thereof, looked to plaintiff firm alone.
“ XXXVIII. In accordance with such rules and customs, defendant was freed from all liability as to each sale consummated by a purchase, and as to each purchase consummated by a sale immediately upon such consummation thereof, although the time for delivery had not arrived (except to pay to plaintiffs all sums required to meet the losses incurred in said transactions, and plaintiffs’ expenses and commissions).
“ LVII. That in case of all the transactions which plaintiffs made in their own names upon the order or by authority of the defendant, plaintiffs bound themselves by an agreement in their own names to make a delivery of all merchandise sold or directed to be sold, and to receive a delivery of all merchandise purchased or contracted to be purchased.
“LVIII. That by the rules and-customs in like cases, plaintiffs made said transactions by means of option, or time contracts, interchangeably with other commission merchants and members of said exchanges.
“LIX. That the option contained in said time contracts is not an option as to performance, but only as to the time of delivery of merchandise specified therein.
“LX. That such option contracts are not by rule, custom or otherwise, transferable by indorsement or by delivery, but are either canceled by or through counter-contracts of the. same party, or are performed by actual delivery of merchandise designated therein at the time of the maturity thereof.
“ LXI. That in case such option contract made upon defendant’s order should be canceled and surrendered, plaintiffs would not thereupon, and did not in any such *318 case acquire any pecuniary interest whatever in the merchandise covered thereby, nor in the delivery thereof.
“ LXII. That in case of such surrender and cancellation defendant had the same right as before to require through plaintiff firm the delivery to himself, if a purchase, and by himself, if a sale, of the merchandise covered by said option or time contract at the price designated, and at the time of the maturity thereof.
“ LXIII. That in case of such cancellation and surrender of option or time contracts made upon defendant’s orders at the Exchanges, plaintiffs could not in any case foresee or select the parties with whom, nor could they foresee the counter-contracts against which such cancellation should be made.
“ LXIV. That under the rules and customs of the Produce Exchanges, in every instance of such cancellation of a contract of purchase or of sale, plaintiff firm would acquire the obligation of the party at whose request it had made the counter-transactions as security (in addition to its own guarantee that the transactions upon defendant’s order should be carried out according to the terms thereof).
“ LXVIII. That by the rules of the Exchanges, and the rules and customs of the trade in all cases of sales or purchases for future delivery, it is the right of the commission merchant or member of the Exchange holding-the option or time contract of another such merchant or member, to require the maker of said contract to deliverer furnish margins or securities for the fulfillment thereof at its maturity, and to increase the said margins or securities to meet the changes in the market price.
“ LXIX. That in case of the cancellation of such option or time contract, according to like rules and customs of trade, if the market price named in the option or time contract against which it was canceled was below the price named therein, the maker of said option of a sale, and the party with whom made, if a purchase, paid to the other party thereto at the time of such can *319 cellation or surrender thereof, the difference between the two prices named in said options respectively.
“ LXX. That such difference paid is not limited, controlled or affected by the market price of the merchandise covered thereby at the time of such cancellation or surrender thereof.
“ LXXI. That in cases where contracts of purchase or sale were offset or canceled, they were so offset or canceled by means of the forming of direct settlements or ring settlements.
“ LXXTT. That said options or time contracts represent no actual market value, except in case of a variation in the market price between the time of the making and the time of the consummation thereof.
“ LXXIXI. That in case of such variation said option contracts represent no such value to the holder unless the market price has declined, if it be a contract of sale for future delivery, and unless it has advanced, if it be a contract of purchase for future delivery.
“ LXXVI. That in such settlement or cancellation of option or time contracts made upon defendant’s order, with like contracts made upon the order of another client, the sums received were not always received in whole or in part for defendant’s benefit, nor by virtue of his transactions or the transactions made at his request, and the sums paid were not always chargeable, in whole or in part, against defendant, or transactions made at his request and for his account.
“ LXXVII. That the mutual surrender or cancellation of option or time contracts is commonly called ringing out. or a settlement thereof.
“ LXXVIII. That the circumstances and method of the cancellation or surrender of option or time contracts ' are as follows: That purchases or sales to fill orders of customers are usually made on the floor of the Exchanges . respectively by open public offers to the members of the Board there assembled; that when it so occurs that a commission merchant who, upon the order of one cus *320 tomer, has sold to or purchased from another commission merchant, merchandise for a certain future delivery, and afterwards, upon the order of another customer, makes a like transaction for a like amount of the same class of merchandise and the same delivery with the same commission merchant, but on the opposite side of the market, then the two commission merchants, as between themselves, set off the contract of purchase as against the contract of sale, and mutually surrender or cancel said contract, settling between them the difference in price. And where such second transaction is not with the same commission merchant with whom the first had occurred, but a different one, and it is found that a circuit of like contracts exists by, or through means of which the same merchandise which a commission merchant upon the order of one customer has sold for future delivery, upon the order of some other customer he had purchased for future delivery, the commission merchants having such circuit, which, in the language of the Exchanges, is called a “ring,” do not make successive deliveries of the merchandise until the same shall come back to the one who first delivered it, but each pays or receives the difference in amount between the price at which he sold and the price at which he bought.”
There are many other findings bearing more remotely upon the point now under consideration, but the foregoing statement contains substantially all upon which the plaintiffs can rely, to'sustain the ruling of the referee that the defendant remained bound upon contracts which had been canceled without consultation with or notice to him. That the plaintiffs, as agents of the defendant, made such cancellation without consultation with, or notice to, the defendant at the time of the cancellation, is one of the undisputed facts of the case.
Now upon the facts hereinbefore stated the defendant contends that by such cancellation the plaintiffs converted the said contracts to their own use to facilitate their business in other respects; that by such cancella *321 tion the plaintiffs released the parties with whom the contracts had been made by the plaintiffs, from all liability thereon; that in consequence thereof, and no other parties or contracts having been actually substituted, whatever remained tó be done between the plaintiffs and the defendant thereafter, was, by plaintiffs’ own acts, reduced to a mere wager transaction, although the contracts between the plaintiffs and the defendant may have been valid in their origin; and that for these reasons the plaintiffs cannot recover upon the canceled contracts.
In my judgment the contention of the defendant is well founded, because the referee has nowhere found either that the principals for whose benefit the contracts had been made, were substituted in some effective way, or that other contracts were actually and specifically substituted in place of the canceled ones. The canceled contracts were made on both sides by commission merchants, or brokers, in their own names and without a disclosure of their respective principals, and when the commission merchants or brokers, who had thus contracted, or a number of them standing in a ring, canceled the contracts as between themselves without substituting their principals in some effective way, they canceled the entire contracts and released each other, or one another, from the obligations thereof, and the contracts became extinguished. Liability on a contract to buy and sell necessarily implies that there are parties to the contract, one of whom has the right to deliver merchandise, and the other of whom is liable to pay for that merchandise. The buyer and the seller must exist as well as the contract. In the case at bar all that the plaintiffs did in fact, was to substitute themselves in place of the released’ parties. Such a practice in effect violates the law of principal and agent because it enables the agent to buy from and sell to his principal and charge his principal commissions for making such purchased sales.
*322 It is claimed by the plaintiffs, however, that in the present case the defendant should be held bound, because he assented to a continuance of his liability by assenting to the customs and usages of the Exchanges. Even if this had been strictly so, it would not follow that the defendant should be held, because a legal liability can never be created by an assent to a custom or usage which in itself is contrary to established legal principles.-
In point of fact the referee did not correctly set forth in his findings the custom or usage of the Exchanges. He only set forth so much of it as coincided with the practice of the plaintiffs. The defendants’ assent, on the other hand, attached to the custom or usage as established by the Exchanges, and the proof of that is to be found in a printed rule rvhich is set forth in the printed case at length and about which there is no dispute. This rule cannot be in any wise affected by the testimony omitted from the printed case. It is as follows, viz:—
“ § 37. In case any member of the Exchange, acting as a commission merchant, shall have made purchases or sales, by order, or for account of another, whether the party for whom such purchase or sale was made, shall be a member of the Exchange or otherwise, and it shall subsequently appear that such trades may be offset and settled by other trades made by such commission merchant, he shall be authorized to make such offset and settlement, and to substitute such other person or persons for the one w'hom, or to whom he may have purchased, or sold-the property originally, provided that in case of such substitution, the member or firm making the same shall be held to guarantee to his or their principal, the ultimate fulfillment to all contracts made for account of such principal, which have been so transferred, and shall be held liable to such principal for all 'damages or losses resulting from such substitution.”
The rule as set forth in full evidently contemplates *323 actual substitution in some effective way, so that the substituted parties and contracts can be. identified and ascertained. Thus construed, the custom sanctioned by the rule may be deemed to be founded in commercial convenience and not to be in contravention of law.
The case of Irwin y. Willair, 110 U. S. R. 499, does not help the plaintiffs. In that case, it is true, it was claimed that the contracts were wagering con-contracts and void. This claim, however, was made in reference to the original contracts entered into between Irwin & Davis on the one side, and the Baltimore Commission Merchants on the other side, and it was concerning that claim that the supreme court of the United States held that the question had been properly submitted to the jury and that the verdict of the jury should not be disturbed on the ground stated. Another assignment of error was that, against Irwin’s objection and exception the circuit court had admitted evidence showing the existence among the Baltimore Grain Commission Merchants operating through the Flour Exchange in that city, of a custom of canceling contracts between them and substituting others, and that the circuit court had held the custom valid and binding upon Irwin although neither he nor his firm had any knowledge of it. There was some proof in the case that other contracts had been substituted, and it was assumed throughout that a sufficient substitution had been made, and all that the court was called upon to decide was whether the substitution was binding upon Irwin without proof of his assent. It was held that Irwin was not bound without- such proof, and for this reason the judgment of the circuit court was reversed and a new trial ordered.
In the later case of Higgins v. McCrea, 116 U. S. R. 671, the question as to the sufficiency of the substitution claimed, came directly before the court. Acting under a rulé like the one hereinbefore considered, the plaintiffs in that case who were commission merchants, released the seller from his contract and having many *324 similar transactions in their business, proposed to themselves to substitute in the place of the contract with the seller, the agreement of such other contractor as might be available for the purpose at the time of settlement, but designated no particular contractor or contract. It was held that an instruction to the jury upon these facts, that there had been no valid substitution of other contracts for those which were canceled, and that consequently plaintiffs could not recover, was correct.
The examination so far made, conclusively demonstrates that the referee did not in his findings of fact, correctly set forth the custom or usage upon which the defendant was held liable, and that the referee erred in holding the defendant liable upon the canceled contracts in the absence of proof that actual substitution was made.
The appeal presents other questions besides the one discussed, but as to them it is not considered necessary to express an opinion now.
The judgment should be reversed upon the facts as well as the law, the order of reference vacated, and a new trial ordered with costs to the appellant to abide the event.
Sedgwick, Ch. J., and Ingraham, J., concurred.